```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:20-cv-00203-MR
```

| | | |
|---|---|---|
| WENDELL J. LE MAITRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| KEITH NADEAU, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint [Doc. 1], filed under 42 U.S.C. § 1983. See 28 U.S.C. §§ 1915(e) and 1915A. Plaintiff is proceeding in forma pauperis. [Docs. 2, 7].

**I.   BACKGROUND**

Pro Se Plaintiff Wendell J. Le Maitre ("Plaintiff"), a prisoner of the State of North Carolina currently incarcerated at Alexander Correctional Institution ("Alexander") in Taylorsville, North Carolina, filed this action on December 28, 2020, pursuant to 42 U.S.C. § 1983. [Doc. 1]. Plaintiff alleges that Defendants violated his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution in relation to alleged deliberate indifference to Plaintiff's safety, cruel and unusual punishment, excessive force, retaliation for redress of grievances, and deprivation of

Plaintiff's substantive due process rights. Plaintiff names the following individuals as Defendants in this matter, whom he purports to sue in their individual and official capacities: (1) Keith Nadeau, identified as a Correctional Transportation Officer at Alexander; (2) FNU Chester, identified as a Security Risk Group (SRG) Captain at Alexander; (3) FNU Dula, identified as an SRG Officer at Alexander; (4) Justin Wineburger, identified as a Correctional Transportation Officer at Alexander; (5) FNU Lipford, identified as a Sergeant at Alexander; (6) FNU Cox, identified as a Correctional Officer at Alexander; and (7) FNU Robertson, also identified as a Correctional Officer at Alexander. [Id. at 2-5].

Plaintiff presents a long series of factual allegations in his Complaint, which the Court summarizes here. On December 2, 2017, Defendants Nadeau and Wineburger were assigned to transport Plaintiff to a medical appointment at Central Prison. [Doc. 1 at 5, 7]. Plaintiff was put in full restraints for transport, which included ankle chains, a waist chain, and a "black box" with handcuffs. [Id.]. When Plaintiff boarded the transport van, Nadeau directed Plaintiff to go to the last row in the back of the van. [Id.]. There was a "huge wheel hump" on the floor of the van "approximately two to three feet high" in the path to the back of the van. [Id. at 6]. Plaintiff attempted to cross over the hump, but it was impossible with the ankle

chains.  Nadeau insisted despite Plaintiff's failed efforts.  Eventually, Plaintiff fell forward into the rear row of seats as he continued to try to get over the hump.  [Id.].  Nadeau then closed the van's side door as Plaintiff, in pain, struggled to make his way to the rear seat.  [Id. at 6-7].

Once at Central Prison, Nadeau instructed Plaintiff to exit the van.  Plaintiff told Nadeau that he was in pain and that it was impossible to get over the van's hump.  Nadeau grew impatient and ordered Plaintiff to make his way over the hump.  [Id. at 7].  Plaintiff again attempted to step over the hump but slipped and fell to the van's floorboard after colliding with the separation cage at the front of the van.  [Id.].  Plaintiff laid on the floor of the van for approximately three minutes before rising and exiting the van.  Plaintiff told Nadeau that he wanted medical attention and Nadeau agreed to this request.  [Id. at 7-8].  Nadeau and Wineberger escorted Plaintiff to a holding cell at Central Prison's Orthopedic Clinic area where Plaintiff remained in severe pain for hours, waiting to be seen by medical staff.  [Id. at 8].  Plaintiff was seen for his scheduled appointment.  [Id.].  Thereafter, when Plaintiff was leaving the Orthopedic Clinic, he informed the desk officer, FNU Lynn, of the incident in the van and showed Lynn the injury to Plaintiff's right shoulder and a hole in Plaintiff's shirt at his shoulder area.  [Id.].  Lynn then ordered Defendants Cox and Robertson, the two transport officers

assigned to Plaintiff, to escort Plaintiff to the medical triage area to be examined and treated for his injuries. [Id. at 8-9]. Plaintiff was treated for his injuries and provided pain medication. [Id. at 9]. Plaintiff returned to Alexander that day. [See id.].

On Plaintiff's return to Alexander that day, he immediately submitted a grievance "to try and solve the problem, presenting the facts relating to this Complaint." [Id. at 9]. The next evening, on December 23, 2017, Plaintiff received a memo from Defendant Dula, stating that Plaintiff was "on the 'Gang Associate Watch List,' due to an [*sic*] reliable Confidential Informant, without any form of proper Due Process." [Id. at 9]. In December 2017, Plaintiff submitted a grievance regarding Dula's "vague claims of gang affiliation." [Id.].

As on January 20, 2018, Plaintiff had not received a response or a copy of the grievance regarding the van incident. Plaintiff had, however, received a response to the grievance against Dula, "which specified no legitimit [*sic*] valid reasons for his severe actions against him." [Id. at 10]. On January 25, 2018, Plaintiff submitted a second grievance regarding the van incident. [Id.]. As of January 30, 2018, Plaintiff had not received a response to this grievance, but was placed in the Restrictive Housing Unit for no legitimate reason. [Id.]. Thereafter, Plaintiff wrote to Superintendent Dye in an attempt

4

to redress the grievance. Plaintiff received no response. [Id.].

After nearly two months in segregation, Plaintiff was transferred to Lanesboro Correctional Institution ("Lanesboro") on March 20, 2018. [Id. at 11]. Plaintiff remained at Lanesboro until May 1, 2018. While there, Plaintiff was allowed only 15 minutes to use the phone and take a shower, all while handcuffed, every other day. He was not allowed recreation time. [Id.]. From Lanesboro, Plaintiff was transferred to Mountain View Correctional Facility ("Mountain View"). At Mountain View, Plaintiff experienced "severe" retaliation and harassment as a result of being labeled a gang member. [Id.].

On August 2, 2018, Plaintiff was transferred back to Alexander "due to retaliation issues," which Plaintiff alleges are the subject of a separate lawsuit. [Id.]. Plaintiff was again placed in segregation without legitimate reason. [Id. at 12]. On August 20, 2018, Plaintiff was moved out of segregation and to the general population. [Id.]. On August 27, 2018, Plaintiff submitted another grievance related to the van incident. [Id.]. On August 30, 2018, Plaintiff received a response, rejecting the grievance as untimely. [Id.]. Two days later, Plaintiff attempted to appeal the response to Superintendent Dye, explaining the "grievance obstruction" over the previous months. Plaintiff received no response from Dye. [Id.].

5

In the fall of 2018, Plaintiff went to the SRG office and "desperately pleaded" with Dula and Chester to remove Plaintiff from the gang watch list. [Id. at 12-13]. Both Dula and Chester agreed to remove Plaintiff from the list, noting that they had not heard anything regarding Plaintiff associating with gang members. [Id. at 13].

On April 17, 2019, Plaintiff "experienced negligence by Alexander staff." Plaintiff alleges that this matter is currently the subject of a "TORT claim." [Id. at 13]. Plaintiff submitted a grievance related to this alleged negligence on June 2, 2019. [Id.]. Ten days later, Plaintiff received a letter from Chester advising Plaintiff that he was again placed on the gang member watch list, again without due process. [Id.].

In January 2020, Lipford, Robertson, and two other correctional officers "ransacked" Plaintiff's cell and Lipford read Plaintiff's legal materials. [Id. at 13-14]. Later that month Lipford and Robertson "thoroughly frisked" Plaintiff and Lipford confiscated Plaintiff's religious toboggan. Lipford then directed Robertson to take Plaintiff to the staff bathroom a few feet away. Lipford and Robertson then stripped Plaintiff's clothes off with the bathroom door wide open. A female staff member walked by and looked at Plaintiff. [Id. at 14]. On February 8, 2020, Lipford, Robertson, and another staff member "toss[ed] everything around in [Plaintiff's] cell," leaving it in disarray.

[Id.]. Plaintiff submitted a grievance the same day regarding "the campaign [of] harassment." [Id. at 15]. Plaintiff received a response to this grievance a few days later. Unit Manager Powell stated that she would personally speak to Lipford and tell him to leave Plaintiff alone if Plaintiff would cancel the grievance. Plaintiff agreed to this resolution. [Id.].

On June 26, 2020, shortly after Plaintiff began working as a prison barber, Robertson and Lipford disciplined Plaintiff and "took his job," claiming the Plaintiff was "not cutting offenders hair on the sign up list for hair cuts." [Id. at 15 (errors uncorrected)]. Plaintiff submitted a grievance the same day. [Id. at 16]. Plaintiff received a response three days later. Plaintiff appealed this grievance to the last step. [Id.]. Plaintiff submitted another grievance on this issue a few months later. He received a response and again appealed to the last step. [Id.].

On November 10, 2010, when Plaintiff was trying to use the phone, Cox and Robertson entered Plaintiff's pod "very aggressively." Cox ordered Plaintiff to hang up the phone and, at the same time, Cox grabbed his pepper spray and aimed it at Plaintiff. Plaintiff was not violating any prison rules at the time. [Id. at 17]. Cox sprayed Plaintiff in the face as Plaintiff was asking what was going on. Cox then sprayed Plaintiff in the face a second time and "aggressively came toward" Plaintiff. Plaintiff retreated and tried to run to his

7

cell. Cox chased after him, emptying his can of pepper spray all over the back of Plaintiff's head and back. As Plaintiff entered his cell, Cox kicked Plaintiff's cell door into Plaintiff's body. [Id. at 17]. As a result of this incident, Plaintiff served 30 days in Restrictive Housing for "exaggerated disciplinary charges of assault on staff and not following a direct order." [Id.]. After Plaintiff had been in segregation for three weeks, the Disciplinary Hearing Officer reinvestigated the assault charge and reduced it to a "threatening charge." [Id.].

Plaintiff was released from segregation on December 10, 2020. [Id. at 18]. The next day, when Plaintiff's breakfast was being delivered, Plaintiff asked Robertson for a milk. Rather than handing Plaintiff the milk, Robertson gave the milk to Cox, who dropped the milk on the metal table in front of Plaintiff, "breaking the seal." [Id.]. Plaintiff told Cox and Robertson to stop harassing him. Cox replied, "or else what, what you going to do, run again?" [Id.].

Based on these factual allegations, Plaintiff purports to state the following claims: (1) "deliberate indifference" under the Eighth Amendment against Nadeau related to the van incident and against Wineburger for not reporting Nadeau; (2) deliberate disregard of an excessive risk to Plaintiff's safety and violation of prison transportation policy against Nadeau and

Wineburger related to the van incident; (3) retaliation for Plaintiff's redress of grievances under the First Amendment against Dula, Chester, Lipford, Robertson, and Cox; (4) violation of Plaintiff's rights under the Fourth Amendment against Lipford and Robertson related to their strip search of Plaintiff; (5) denial of substantive due process under the Fifth and Fourteenth Amendments and cruel and unusual punishment in violation of the Eighth Amendment against Cox and Robertson for denying Plaintiff telephone access; (6) cruel and unusual punishment under the Eighth Amendment against Dula for transferring Plaintiff to Lanesboro; and (7) use of excessive force under the Eighth Amendment against Cox for Cox's use of pepper spray on Plaintiff;

For injuries, Plaintiff claims he suffered pain and suffering, physical injury, emotional distress from the alleged conduct. [Id. at 18-19, 23]. Plaintiff seeks declaratory and monetary relief. [Id. at 23-24].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the

complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### III. DISCUSSION

#### A. Official Capacity Claims

Plaintiff purports to sue Defendants, who are state officials, in their individual and official capacities. However, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Dep't of State Police, 491 U.S. 58, 71 (1989). Because a state is not a "person" under § 1983, state officials acting in their official capacities cannot be sued for damages thereunder. Allen v.

Cooper, No. 1:19-cv-794, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019). Furthermore, the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). As such, Plaintiff's claims against Defendants in their official capacities do not survive initial review and will be dismissed.

### B. First Amendment

Plaintiff asserts claims against Defendants Dula, Chester, Lipford, Robertson, and Cox for violating Plaintiff's First Amendment right to redress of grievances by retaliating against and punishing Plaintiff after Plaintiff filed various grievances. An inmate has a clearly established First Amendment right to be free from retaliation for filing grievances. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017)

Taking Plaintiff's allegations as true for purposes of initial review, the Court finds that Plaintiff's claim against these Defendants for violation of Plaintiff's First Amendment right to be free from retaliation for filing grievances is not clearly frivolous. As such, Plaintiff's retaliation claim against Defendants Dula, Chester, Lipford, Robertson, and Cox survives initial review.

## C. Fourth Amendment

Plaintiff alleges that Defendants Lipford and Robertson violated Plaintiff's rights under the Fourth Amendment by their strip search of Plaintiff without justification as part of their "campaign of harassment." [Doc. 1 at 21]. The Fourth Amendment protects "[t]he right of the people to be secure in their persons … against unreasonable searches and seizures." U.S. CONST. amend. IV. "The applicability of the Fourth Amendment turns on whether 'the person involving its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action.'" King v. Rubenstein, 825 F.3d 206, 214 (2016) (quoting Hudson v. Palmer, 468 U.S. 517, 525, 104 S. Ct. 3194 (1984) (internal quotations omitted)). While a prisoner has no legitimate expectation of privacy in his prison cell, Hudson, 468 U.S. at 528, the same is not necessarily true of his person. See King, 825 F.3d at 214. In Bell v. Wolfish, 441 U.S. 520, 99 S. Ct. 1861 (1979), the Supreme Court "developed a flexible test to determine the reasonableness of a broad range of sexually invasive searches…." United States v. Edwards, 666 F.3d 877, 883 (4th Cir. 2011) (citation and internal quotation marks omitted). In determining the reasonableness of a search under Wolfish, a court is to consider: "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it,

12

and the place in which it is conducted." 441 U.S. at 559.

Here, Plaintiff alleges that he was strip searched without reason in a staff bathroom with the door left open. Plaintiff also alleges that a female staff member walked by and witnessed the strip search. Taking Plaintiff's allegations as true and giving Plaintiff the benefit of every reasonable inference, the Court finds that Plaintiff's Fourth Amendment claim against Defendants Lipford and Robertson based on the alleged strip search survives initial review in that it is not clearly frivolous. To the extent Plaintiff's Fourth Amendment claim was based on alleged searches of Plaintiff's cell, however, it is dismissed.

### D. Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment." Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997). Furthermore, prisoners have no right to be

housed in any particular facility, at a particular custody level, or in a particular portion or unit of a correctional institution. Pevia v. Hogan, 443 F.Supp.3d 612, 634 (4th Cir. 2020).

As to the use of excessive force, to establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21.

Here, taking Plaintiff's allegations as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has not stated a claim under the Eighth Amendment based on his transfer to Lanesboro by Defendant Dula or based on the alleged denial of access to a telephone by Defendants Cox and Robertson. Although the conditions imposed at Lanesboro may have been harsher than those imposed at Alexander, such conditions are not actionable under the Eighth Amendment's prohibition against cruel and unusual

14

punishment. Furthermore, denial of access to a telephone on a particular instance is not actionable under the Eighth Amendment. These claims will, therefore, be dismissed.

Plaintiff has also failed to state a claim under the Eighth Amendment based on Defendants Nadeau's and Wineburger's alleged deliberate indifference and deliberate disregard for Plaintiff's safety during the van incident. While Defendant Nadeau may have been acting unreasonably in directing Plaintiff to traverse the "hump" while Plaintiff was in ankle shackles, nothing that transpired that day was sufficient to state a claim under the Eighth Amendment. These claims will, therefore, also be dismissed on initial review.

The Court, however, does find that Plaintiff's claim against Defendant Cox under the Eighth Amendment based on the use of excessive force survives initial review.

### E. Substantive Due Process

Plaintiff claims his substantive due process rights under the Fifth and Fourteenth Amendments were violated when Defendants Cox and Robertson denied Plaintiff access to the telephone on a single occasion on November 10, 2020. Taking Plaintiff's allegations as true, the Court finds that his claim on this ground is clearly frivolous. The denial of access to a

15

telephone on a single occasion simply does not implicate due process concerns. See Hawkins v. Freeman, 195 F.3d 732, 749 (4th Cir. 1999) ("There is no general liberty interest in being free of even the most arbitrary and capricious government action; the substantive component of the due process clause only protects from arbitrary government action that infringes a specific liberty interest.") (citations omitted).

As such, Plaintiff's Fifth and Fourteenth Amendment claims against Defendants Cox and Robertson fail initial review and will be dismissed.

## IV. CONCLUSION

In sum, the Complaint survives initial review under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A as to Plaintiff's First Amendment claim against Defendants Dula, Chester, Lipford, Roberston, and Cox; Plaintiff's Fourth Amendment claim against Defendant Lipford and Robertson based on the alleged strip search; and Plaintiff's Eighth Amendment claim against Defendant Cox based on the alleged use of excessive force. All other claims brought by Plaintiff will be dismissed in accordance with the terms of this Order.

## **ORDER**

**IT IS, THEREFORE, ORDERED** that all claims asserted in this matter as to all Defendants are hereby **DISMISSED with prejudice** for failure to

state a claim, with the exception of the First Amendment claim against Defendants Dula, Chester, Lipford, Robertson, and Cox; the Fourth Amendment claim against Defendant Lipford and Robertson based on the strip search; and the Eighth Amendment claim against Defendant Cox based on the use of excessive force, which are allowed to pass initial review.

**IT IS FURTHER ORDERED** that Defendants Nadeau and Wineburger are hereby **DISMISSED** as Defendants in this matter for failure to state a claim.

Local Rule 4.3 sets forth a procedure to waive service of process for current and former employees of the North Carolina Department of Public Safety ("NCDPS") in actions filed by North Carolina State prisoners. In light of the Court's determination that this case passes initial review, the Court will order the Clerk of Court to commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendants Dula, Chester, Lipford, Roberston, and Cox, who are alleged to be current or former employees of NCDPS.

**IT IS, THEREFORE, ORDERED** that Clerk of Court shall commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendants Dula, Chester, Lipford, Roberston, and Cox, who are alleged to be current or former employees of NCDPS.

**IT IS SO ORDERED**.

Signed: March 9, 2021

Martin Reidinger
Chief United States District Judge